*United States ex rel. Kristen Bradley, State of Wisconsin ex. rel. Kristen Bradley v. Gregg Gaylord, M.D., Vascare-Mayfair LLC, and Advanced Interventions, S.C.*

## Filed Under Seal & Joint Prosecutorial Privilege

### TABLE OF CONTENTS

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF UNDER 31 U.S.C. § 3729 ET SEQ. FALSE CLAIMS ACT AND WIS. STAT. § 20.931**

| | | |
|---|---|---|
| **INTRODUCTION** | | **par. 1-4** |
| **I.** | **PARTIES** | **par. 5-10** |
| **II.** | **JURISDICTION AND VENUE** | **par. 11-16** |
| **III.** | **STATEMENT OF THE ACTION** | **par. 17-19** |
| **IV.** | **GENERAL FACTS** | **par. 20-29** |
| | **A. GENERAL FACTS-DEFENDANTS** | **par. 20-26** |
| | **B. GENERAL FACTS-RELATOR** | **par. 27-29** |
| **V.** | **DEFENDANTS' FRAUDULENT CONDUCT** | **par. 30-71** |
| *SUBSECTION A.* | DEFENDANTS BILL THE GOVERNMENT FOR PHYSICIAN SERVICES WHEN SUCH SERVICES ARE ACTUALLY PERFORMED BY RADIOGRAPHERS OUTSIDE THE SCOPE OF THEIR LICENSE | **par. 30-40** |
| *SUBSECTION B.* | DEFENDANTS SEDATED PATIENTS WHO ARE NOT HEALTHY ENOUGH TO BE SEDATED ANYWHERE OTHER THAN A HOSPITAL | **par. 41-50** |
| *SUBSECTION C.* | DEFENDANTS BILL THE GOVERNMENT FOR PROCEDURES CONDUCTED WITHOUT THE REQUIRED PRIOR INFORMED CONSENT | **par. 51-53** |
| *SUBSECTION D.* | DEFENDANTS FALSELY BILL FOR SURGERY PERFORMED WITHOUT REQUIRED PRE-SURGICAL ASSESSMENTS | **par. 54-56** |
| *SUBSECTION E.* | DEFENDANTS FRAUDULENTLY OPERATE VASCARE AND ADVANCED INTERVENTIONS AS AN AMBULATORY SURGERY CENTER AND A CLINIC IN THE SAME SPACE, WHICH IS IN VIOLATION OF THE REGULATIONS | **par. 57-62** |
| *SUBSECTION F.* | DEFENDANTS FALSIFY MEDICAL RECORDS IN SUPPORT OF CLAIMS SUBMITTED TO THE GOVERNMENT FOR PAYMENT | **par. 63-66** |
| *SUBSECTION G.* | DEFENDANTS TERMINATED RELATOR DUE TO COVERED CONDUCT | **par. 67-71** |

**VI.  CLAIMS**                                                          **par. 72-174**

**COUNT ONE –** DEFENDANT VASCARE PRESENTING FALSE            **par. 72-75**
CLAIMS FOR MEDICAL ASSISTANCE CONTRARY TO
31 U.S.C. § 3729(a)(1)(A)

**COUNT TWO** - DEFENDANT VASCARE PRESENTING FALSE           **par. 76-79**
CLAIMS FOR MEDICAL ASSISTANCE CONTRARY TO
31 U.S.C. § 3729(a)(1)(B)

**COUNT THREE** - DEFENDANT VASCARE PRESENTING FALSE         **par. 80-83**
 CLAIMS FOR MEDICAL ASSISTANCE CONTRARY TO
31 U.S.C. § 3729(a)(1)(C)

**COUNT FOUR** - DEFENDANT VASCARE PRESENTING FALSE          **par. 84-87**
CLAIMS FOR MEDICAL ASSISTANCE CONTRARY TO
31 U.S.C. § 3729(a)(1)(G)

**COUNT FIVE** - Wisconsin False Claims for Medical Assistance Act     **par. 88-92**
Wis. Stat. §20.931(2)(a) DEFENDANT VASCARE'S KNOWING
SUBMISSION OF FALSE CLAIMS FOR PAYMENT

**COUNT SIX** - Wisconsin False Claims for Medical Assistance Act      **par. 93-97**
Wis. Stat. §20.931(2)(b) DEFENDANT VASCARE'S KNOWING
CREATION OF FALSE RECORD OR STATEMENT
MATERIAL TO FALSE CLAIM

**COUNT SEVEN** - Wisconsin False Claims for Medical Assistance Act    **par. 98-102**
Wis. Stat. §20.931(2)(c) DEFENDANT VASCARE'S CONSPIRACY
TO COMMIT VIOLATION OF FALSE CLAIMS ACT

**COUNT EIGHT** - Wisconsin False Claims for Medical Assistance Act    **par. 103-105**
Wis. Stat. §20.931(2)(h) DEFENDANT VASCARE'S KNOWING OR
IMPROPER AVOIDANCE OF REPAYMENT OF GOVERNMENT FUNDS

**COUNT NINE** - DEFENDANT ADVANCED INTERVENTIONS           **par. 106-109**
PRESENTING FALSE CLAIMS FOR MEDICAL ASSISTANCE
CONTRARY TO 31 U.S.C. § 3729(a)(1)(A)

**COUNT TEN** - DEFENDANT ADVANCED INTERVENTIONS            **par. 110-114**
PRESENTING FALSE CLAIMS FOR MEDICAL ASSISTANCE
CONTRARY TO 31 U.S.C. § 3729(a)(1)(B)

**COUNT ELEVEN** - DEFENDANT ADVANCED INTERVENTIONS   **par. 115-118**
PRESENTING FALSE CLAIMS FOR MEDICAL ASSISTANCE
CONTRARY TO 31 U.S.C. § 3729(a)(1)(C)

**COUNT TWELVE** - DEFENDANT ADVANCED INTERVENTIONS   **par. 119-122**
PRESENTING FALSE CLAIMS FOR MEDICAL ASSISTANCE
CONTRARY TO 31 U.S.C. § 3729(a)(1)(G)

**COUNT THIRTEEN** - Wisconsin False Claims for Medical Assistance   **par. 123-127**
Act, Wis. Stat. §20.931(2)(a) DEFENDANT ADVANCED INTERVENTIONS'
KNOWING SUBMISSION OF FALSE CLAIMS FOR PAYMENT

**COUNT FOURTEEN** - Wisconsin False Claims for Medical Assistance   **par. 128-132**
Act, Wis. Stat. §20.931(2)(b) DEFENDANT ADVANCED INTERVENTIONS'
KNOWING CREATION OF FALSE RECORD OR STATEMENT MATERIAL
TO FALSE CLAIM

**COUNT FIFTEEN** - Wisconsin False Claims for Medical Assistance   **par. 133-135**
Act, Wis. Stat. §20.931(2)(h) DEFENDANT ADVANCED INTERVENTIONS'
KNOWING OR IMPROPER AVOIDANCE OF REPAYMENT OF
GOVERNMENT FUNDS

**COUNT SIXTEEN** - DEFENDANT GREGG GAYLORD   **par. 136-139**
PRESENTING FALSE CLAIMS FOR MEDICAL ASSISTANCE
CONTRARY TO 31 U.S.C. § 3729(a)(1)(A)

**COUNT SEVENTEEN** - DEFENDANT GREGG GAYLORD   **par. 140-143**
PRESENTING FALSE CLAIMS FOR MEDICAL ASSISTANCE
CONTRARY TO 31 U.S.C. § 3729(a)(1)(B)

**COUNT EIGHTEEN** - DEFENDANT GREGG GAYLORD   **par. 144-147**
PRESENTING FALSE CLAIMS FOR MEDICAL ASSISTANCE
CONTRARY TO 31 U.S.C. § 3729(a)(1)(C)

**COUNT NINETEEN** - DEFENDANT GREGG GAYLORD   **par. 148-151**
PRESENTING FALSE CLAIMS FOR MEDICAL ASSISTANCE
CONTRARY TO 31 U.S.C. § 3729(a)(1)(G)

**COUNT TWENTY** - Wisconsin False Claims for Medical Assistance   **par. 152-156**
Act, Wis. Stat. §20.931(2)(a) DEFENDANT GREGG GAYLORD'S
KNOWING SUBMISSION OF FALSE CLAIMS FOR PAYMENT

**COUNT TWENTY ONE** - Wisconsin False Claims for Medical   **par. 157-161**
Assistance Act, Wis. Stat. §20.931(2)(b)DEFENDANT GREGG
GAYLORD'S KNOWING CREATION OF FALSE RECORD OR

STATEMENT MATERIAL TO FALSE CLAIM

**COUNT TWENTY TWO** - Wisconsin False Claims for Medical         **par. 162-164**
Assistance Act, Wis. Stat. §20.931(2)(h) DEFENDANT
GREGG GAYLORD'S KNOWING OR IMPROPER AVOIDANCE
OF REPAYMENT OF GOVERNMENT FUNDS

**COUNT TWENTY THREE** - RETALIATORY WRONGFUL          **par. 165-169**
DISCHARGE PURSUANT TO 31 U.S.C. § 3730(H)

**COUNT TWENTY FOUR** - RETALIATORY WRONGFUL          **par. 170-174**
DISCHARGE PURSUANT TO WIS. STAT. §20.931(14)

**PRAYER FOR RELIEF**                                                       **pp. 35-36**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

UNITED STATES *ex rel.*
KRISTEN BRADLEY

STATE OF WISCONSIN, *ex. rel.*
KRISTEN BRADLEY
       Plaintiffs,

v.

GREGG GAYLORD, M.D.,
VASCARE-MAYFAIR LLC, and
ADVANCED INTERVENTIONS, S.C.,

       Defendants.

Filed *In Camera and under seal*
pursuant to 31 U.S.C.§3730(b)(2)

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF UNDER 31
U.S.C. § 3729 *et seq.* FEDERAL
FALSE CLAIMS ACT AND
WISCONSIN STATE FALSE CLAIMS
ACT, WIS. STAT. § 20.931

Jury Trial Demanded

---

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
## UNDER 31 U.S.C. § 3729 ET SEQ. FALSE CLAIMS ACT AND WIS. STAT. § 20.931

---

NOW COMES Kristen Bradley Plaintiff/Relator, through her attorneys Cross Law Firm,

S.C., by Nola J. Hitchcock Cross, Mary C. Flanner, and Katherine M. Gaumond, and as for a

complaint against Defendants, Gregg Gaylord, M.D., Vascare-Mayfair LLC, and Advanced

Interventions, S.C., states the following:

### INTRODUCTION

1.     This action is brought on behalf of the United States of America and the State of

Wisconsin against Gregg Gaylord, M.D., Vascare-Mayfair LLC and Advanced Interventions,

S.C. to recover for knowingly false claims they submitted for payment to the United States and

the State of Wisconsin, primarily through the Centers for Medicare and Medicaid Services

("CMS") in a scheme to obtain payments from the government to which they were not entitled.

2.     Defendants, who treat patients with kidney disease, including those on dialysis, engage in fraudulent schemes including 1) billing Medicare and Medicaid for physician services such as angioplasties, angiograms, injections, and suture removal that were actually performed by radiographers who are not licensed or otherwise authorized to perform such procedures; 2) falsely billing for procedures on sedated patients when hospital facilities were required but not used; 3) billing for procedures when required discharge procedures were intentionally omitted; 4) billing for procedures without first requesting or obtaining informed consent; 5) billing for procedures where Defendants intentionally omitted required pre-surgical assessments; and 6) fraudulently operating and billing through Advanced Interventions, S.C. and Vascare, which are operating in the exact same space, in violation of federal regulations, to obtain a higher Government payment than medically justified or allowed.

3.     Such schemes were designed to perform services on all potential patients and to submit maximum possible billings to the government, regardless of medical necessity, potential harm to patients, or lack of patient informed consent and to induce all potential patients to undergo procedures for which the government should not have been billed.

4.     Relator Kristen Bradley brings this action on behalf of the United States of America pursuant to the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* ("FCA"), and on behalf of the State of Wisconsin under the False Claims for Medical Assistance Act, Wis. Stat. § 20.931. This is an action for injunctive relief and to recover damages and civil penalties on behalf of the United States of America and State of Wisconsin arising from false billing claims and false representations made or caused to be made to the United States and/or State of Wisconsin and their agents and intermediaries in violation of the aforementioned statutes.

2

# I. **PARTIES**

5.     Relator, Kristen Bradley ("Bradley" or "Relator"), is a citizen of the United States of America and a resident of this judicial district residing in the State of Wisconsin, County of Ozaukee, Village of Thiensville, 53092.

6.     Defendant Gregg M. Gaylord, M.D. is a citizen of the United States of America and a resident of this judicial district residing in the State of Wisconsin, County of Milwaukee, City of Milwaukee, 53202.

7.     Defendant Vascare-Mayfair LLC, ("Vascare") is a Wisconsin limited liability corporation, with its principal place of business located at 805 North Mayfair Road, State of Wisconsin, County of Milwaukee, City of Wauwatosa, 53226. Its registered agent is Corporate Services, LLC, 4131 W. Loomis Road, Ste. 210; Greenfield, WI 53221.

8.     Defendant Advanced Interventions, S.C. (Advanced Interventions) is a Wisconsin service corporation, with its principal place of business located at 805 North Mayfair Road, State of Wisconsin, County of Milwaukee, City of Wauwatosa, 53226. Its principal office is located at 4131 West Loomis Road Suite 210, Greenfield, WI 53221. Its registered agent is Corporate Services, LLC, 4131 W. Loomis Road, Ste. 210; Greenfield, WI 53221.

9.     Pursuant to 31 U.S.C. § 3730(b)(1), Relator brings this action on behalf of the United States of America, whose Department of Health and Human Services ("HHS") pays claims submitted to it by Gregg Gaylord, M.D., Vascare, and Advanced Interventions through Medicare, Medicaid and other healthcare programs.

10.     Pursuant to Wis. Stat. §20.931(5), Relator brings this action on behalf of the State of Wisconsin, that pays claims submitted to it by Gregg Gaylord, M.D., Vascare, and Advanced Interventions through Medicaid and other State of Wisconsin healthcare programs.

3

## II. JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter of this action pursuant to both 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this court for actions brought pursuant to 31 U.S.C. § 3730.

12.     Jurisdiction over the Wisconsin law claims is conferred pursuant to 28 U.S.C. §1367 and 31 U.S.C. §3732(b).

13.     The Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) due to Defendant's business transactions in this district.

14.     Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) due to Defendants' business transactions in this district.

15.     Prior to filing this complaint, Relator provided written notification to the U.S. Department of Justice of her intent to file this action.

16.     Relator submitted disclosure materials to the U. S. Department of Justice and served this Complaint on the U. S. Attorney General, State of Wisconsin Attorney General, and the U. S. Attorney for the Eastern District of Wisconsin.

## III. STATEMENT OF THE ACTION

17.     This action is brought on behalf of the State of Wisconsin and the United States of America to recover all damages, penalties and other remedies established by and pursuant to Wis. Stat. §20.931 and the FCA. Bradley, as *qui tam* Plaintiff, also claims entitlement to a portion of any recovery obtained by the Government authorized by Wis. Stat. § 20.931(11) and/or the FCA or under alternative remedies.

18.     Relator brings this action to impose liability upon Defendants for violations of Wis. Stat. § 20.931 and the FCA and violations of various state and federal regulations by

4

submission of false claims for reimbursement to the Government for services provided in Defendants' medical clinic and ambulatory surgery center.

19.     Relator also alleges that Defendants terminated her employment in retaliation against her for protected activity pursuant to 31 U.S.C. § 3730(h) and Wis. Stat. §20.931(14).

## IV. GENERAL FACTS

### A. Defendants

20.     Vascare and Advanced Interventions are owned and operated by Gregg Gaylord, M.D., an Interventional Radiologist who treats patients with kidney ailments, including patients requiring regular kidney dialysis. Gaylord is licensed in Illinois, Indiana, and Wisconsin and is Board Certified in Diagnostic Radiology and Interventional and Vascular Radiology.

21.     Defendants utilize X-rays, ultrasounds, and other techniques to obtain images used to direct interventional instruments throughout the body. These techniques are usually performed using needles and catheters to avoid large incisions into the body as an alternative to traditional surgery.

22.     Defendants bill for several medical procedures on a routine basis, including the following: 1) angiography, an X-ray (fluoroscopic) exam of the arteries and veins to diagnose blockages and other blood vessel problems using a catheter to enter the blood vessel and a contrast dye agent to make the artery or vein visible on the X-ray; 2) balloon angioplasty and fistula and graft declot, an opening of blocked or narrowed blood vessels by inserting a balloon into the vessel and inflating it, to treat peripheral arterial disease ("PAD") in the extremities and other blood vessels in the kidneys, brain or elsewhere in the body; 3) stenting, inserting a flexible tube made of plastic or wire mesh to hold open clogged blood vessels or other pathways that have been narrowed or blocked by tumors or other obstructions; 4) thrombolysis, dissolving blood

5

clots by injecting clot-busting drugs to treat blood clots in the vessels around an arteriovenous fistula or graft to permit the continuation of dialysis treatment; 5) embolization, delivering clotting agents (coils, plastic particles, gel, foam, etc.) to block blood flow to a problem area, such as an aneurysm or a fibroid tumor in the uterus or to assist to place or replace central line catheters; and 6) angiograms, specialized x-ray studies that are frequently done to check for blockages or narrowing in blood vessels.

23.     Vascare and Advanced Intervention have entered into Medicare and Medicaid and other Government program provider agreements requiring that Vascare and Advanced Interventions comply with all Federal and State laws pertinent to such programs including Medicare and Medicaid's official handbooks and other publications.

24.     Nearly all of Defendants' patients are Medicare or Medicaid beneficiaries.

25.     Gaylord uses his companies, Vascare and Advanced Interventions, as a single integrated operation, with the same employees and the same facility at 805 North Mayfair Road, Wauwatosa, WI 53226. Gaylord utilizes his integrated operation to falsely obtain maximum payments from the Governments.

26.     Defendants engaged in and are engaging in a scheme of fraudulent conduct by violating state and federal regulations governing 1) admission and discharge requirements; 2) the scope of practice for radiographers; 3) billing for physician services actually performed by radiographers; 4) discharging patients after a procedure before they are stable; and 5) billing for procedures performed without informed consent of the patients.

### B. Relator

27.     Bradley is and has been since 2012 a registered nurse licensed by the State of Wisconsin with license number 193034-30.

6

28.     Vascare employed Bradley as a Registered Nurse from November 15, 2012 until Defendants terminated Bradley on February 1, 2013. In her position with Defendants, Bradley performed preoperative and postoperative assessments and interoperative monitoring of sedated patients with kidney disease.

29.     Soon after commencing employment with Vascare and in the course of her employment with Vascare, Bradley learned Defendants' schemes and conduct to submit false claims to the state and federal government, as described below.

## V. DEFENDANTS' FRAUDULENT CONDUCT

### A. Defendants bill the Government for physician services when such services are actually performed by Radiographers outside the scope of their license.

30.     Defendants direct the radiographers they employ to perform angioplasties, angiograms, suture removal, suturing, removal of central line catheters below skin injections of anesthetic, conduct preoperational and post operation assessments, and perform patient discharge procedures. Such radiographers performed these procedures approximately ten (10) times weekly. Defendants bill Medicare and Medicaid for the procedures as if performed by Gaylord, a physician.

Radiographer Scope of Practice

31.     Radiographers are licensed in Wisconsin under Wisconsin Statutes §§ 462.01– 462.07 and Wisconsin Administrative Codes RAD 1-6, which require only that the person be 18 years of age, hold a high school diploma or its equivalent, pay a fee, submit an application, and be free of an arrest or conviction record. Wis. Stat. § 462.03.

32.     The complete legal scope of practice for a radiographer is "the performance of radiography and radiographic procedures and related techniques to produce images for the interpretation by, or at the request of, a licensed independent practitioner. Radiographers perform

7

the radiographic examination to create the images needed for medical diagnosis and apply scientific knowledge, technical skills, patient interaction, and care necessary to obtain diagnostic information. Radiographers may apply radiation to any part of the human body, may administer contrast agents and related substances for diagnostic purposes." Wis. Admin. Code RAD 4.01.

33.     RAD 4.01(2) states the "scope of practice of a licensed radiography is defined in the Radiography Standards, Practice Standards for Medical Imaging and Radiation Therapy, 2010 American Society of Radiologic Technologists," which includes:

- Receiving, relaying and documenting verbal, written and electronic orders in the patient's medical record

- Corroborating patient's clinical history with procedure, ensuring information is documented and available for use by a licensed independent practitioner

- Verifying informed consent

- Assuming responsibility for patient needs during procedures

- Preparing patients for procedures

- Applying principles of "As Low As Reasonably Achievable" to minimize exposure to patient, self and others

- Performing venipuncture as prescribed by a licensed independent practitioner

- Starting and maintaining intravenous access as prescribed by a licensed independent Practitioner

- Identifying, preparing and/or administering medications as prescribed by a licensed independent practitioner

- Evaluating images for technical quality, ensuring proper identification is recorded

- Identifying and managing emergency situations

8

- Providing education

- Educating and monitoring students and other health care providers

- Performing ongoing quality assurance activities

- Performing diagnostic radiographic procedures

- Determining radiographic technique exposure factors

- Assisting licensed independent practitioner with fluoroscopic and specialized interventional radiography procedures

- Performing noninterpretive fluoroscopic procedures as prescribed by a licensed independent practitioner

- Performing peripherally inserted central catheter placement where state statute(s) and/or lawful institutional policy permits

- Applying the principles of patient safety during all aspects of radiographic procedures, including assisting and transporting patients

Source: http://www.asrt.org/docs/practice-standards/GR11_Rad_PS.pdf

34.     Facility manager of Vascare and Advanced Intervention, Megan Simon, and employees Joseph Didion and Shante Dodd are all radiographers, licensed by the State of Wisconsin, performing medical procedures well outside the scope of their license. Gaylord falsely bills the Government healthcare programs for medical procedures performed by Simon, Didion, and Dodd as if Gaylord had performed the services and he falsifies the documentation sent to the Government for payment to verify that such procedures were performed by him.

35.     Once Relator started employment for Vascare, she became aware that from the time Vascare and Advanced Interventions opened in November 2011, the radiographers performed pre-surgical and post-surgical assessments, which is not part of the scope of practice

9

outlined above. Gaylord rarely completed these assessments. As a Registered Nurse, Relator is licensed to perform the assessments, but such assessments are well outside the scope of the radiographers' licenses in the State of Wisconsin. Relator performed the assessments occasionally, but on a regular basis, the radiographers would perform the pre-and post-surgical assessments.

36.    On January 31, 2013, Defendants' radiographer Simon, performed a stent and angioplasty from start to finish on Defendants' patient "D.P." Simon performed his stent and angioplasty, which is not within a radiographer's scope of practice as detailed above, from start to finish without Gaylord's assistance or presence. Thereafter, it was billed to Medicare or Medicaid as if Gaylord had performed the procedure. Even if Gaylord was in the room, Simon would not have been able to legally perform the procedure; however, Gaylord's absence makes it even more egregious and dangerous to patient safety.

37.    On January 23, 2013, Didion performed an under the skin Lidocaine injection and removal of catheter in chest, which is not within a radiographer's scope of practice as detailed above, on patient "E.L." outside the scope of his license. Defendant billed Medicare or Medicaid for this procedure as if Gaylord had performed it.

38.    On January 22, 2013, Simon performed an under the skin Lidocaine injection and removal of catheter in chest, which is not within a radiographer's scope of practice as detailed above, on patient "D.L." for which she was not qualified or licensed to perform. Defendant billed Medicare or Medicaid for this procedure as if Gaylord had performed it.

39.    On December 18, 2012, Simon or Dodd, performed an under the skin Lidocaine injection and removal of catheter in chest, which is not within a radiographer's scope of practice as detailed above, on patient "L.S." for which neither of them are not qualified or licensed to

10

perform. Defendant billed Medicare or Medicaid for this procedure as if Gaylord had performed it.

40.     For services performed on patient "R.D.", date of service January 28 or 29, 2013 Gaylord directed Simon to suture the patient, which is not within a radiographer's scope of practice as detailed above. Defendant billed Medicare or Medicaid for this procedure as if Gaylord had performed it.

## B. Defendants sedated patients who are not healthy enough to be sedated anywhere other than a hospital.

41.     Vascare uses the American Society of Anesthesiologist physical status classification to assess a patient's health before performing surgery on the patient. However, Gaylord, misclassifies patients when documenting the physical status classification, which means that the documentation will indicate that a patient is healthy enough to undergo outpatient surgery in order to perform the surgery and bill for such services on patients not healthy enough for surgery. Such conduct places patients at risk. Gaylord then performs and bills Medicare and/or Medicaid for surgery on patients who, by medical necessity, should only have the procedure performed in a hospital.

42.     A physician must examine the patient immediately before surgery to evaluate the risk of anesthesia and of the procedure to be performed as required by the CMS manual cited below and the Code of Federal Regulations. Before discharge from the ambulatory surgical center (ASC), each patient must be evaluated by a physician or by an anesthetist as defined at 42 CFR § 410.69(b) in accordance with applicable State health and safety laws, standards of practice, and ASC policy, for proper anesthesia recovery. 42 CFR 416.42(a).

43.     The American Society of Anesthesiologists (ASA) sets forth a classification system for assessing the fitness of patients before surgery. The six categories are

11

ASA Physical Status ("PS") 1 - A normal healthy patient

ASA PS 2 - A patient with mild systemic disease

ASA PS3 - A patient with severe systemic disease

ASA PS 4 - A patient with severe systemic disease that is a constant threat to life

ASA PS 5 - A moribund patient who is not expected to survive without the operation

ASA PS 6 - A declared brain-dead patient whose organs are being removed for donor purposes

44.     "As the ASA PS level of a patient increases, the range of acceptable risk associated with a specific procedure or type of anesthesia in an ambulatory setting may narrow. An ASC that employed this classification system in its assessment of its patients might then consider, taking into account the nature of the procedures it performs and the anesthesia used, whether it will accept for admission patients who would have a classification of ASA PS IV or higher. For many patients classified as ASA PS level III, an ASC may also not be an appropriate setting, depending upon the procedure and anesthesia." CMS Manual System Pub. 100-07 State Operations Provider Certification, Dated May 13, 2011.

45.     Gaylord sedates and performs outpatient surgery on patients with an ASA physical status classification of 4 or 5 in Vascare. Patients on dialysis generally have ASA physical status classification of 4, and nearly all of Defendants' patients are on dialysis.

46.     Based upon Relator's personal knowledge of Defendants' patient population, Relator estimates that at least approximately 75% of the patients are not healthy enough to undergo surgery in an ASC based upon the ASA classification and other related factors. Because an ASA 4 is a patient with a "severe systemic disease that is a constant threat to life," this means that automatically all patients on kidney dialysis are classified as 4s, because without dialysis,

12

they would not stay alive. Based upon the regulations for medical standards, most patients anesthetized by Defendants must be in a hospital, not an ASC to undergo such procedures.

47. The potential harm is that the patients, because of failing health, could have had complications and would not have been at a hospital to receive proper treatment, which could have resulted in further injuries, or death. Examples of patients who had advanced kidney conditions and an ASA score of 4 or more but upon whom Defendants nevertheless performed angiograms and balloon angioplasties using sedation at an ASC instead of a hospital are:

    i. Patient "H.S.", date of service February 1, 2013 for an angiogram and balloon angioplasty using sedation; ASA 4 or 5 because patient suffered from uncontrolled diabetes, uncontrolled high blood pressure, and end stage renal failure. She could not walk alone, was wheelchair bound, and had suffered from multiple strokes. Without dialysis, the patient would not survive more than a few days.

    ii. Patient "R.D.", date of service January 28, 2013 for a fistulogram declot; ASA 4 because patient suffered from uncontrolled diabetes, uncontrolled high blood pressure, dementia, and end stage renal failure. During her procedure, Gaylord could not get her fistula unclogged so he added in a catheter. Without the catheter, the patient would have been expected to die in three or so days because she would not have been able to have dialysis without a catheter.

    iii. Patient "C.L.", date of service January 21, 2013 for an angiogram and balloon angioplasty using sedation; ASA 4 because patient suffered from

13

uncontrolled diabetes, uncontrolled high blood pressure, end stage renal failure and allergy and extreme reaction to contrast dye.

iv. Patient "S.D.", date of service January 21, 2013 for an angiogram and balloon angioplasty using sedation; ASA 4 because patient suffered from uncontrolled diabetes, uncontrolled high blood pressure, and end stage renal failure. Without dialysis, the patient would not survive more than a few days.

v. Patient "J.W.", date of service December 29, 2012 for an angiogram and balloon angioplasty using sedation; ASA 4 because patient suffered from uncontrolled diabetes, uncontrolled high blood pressure, and end stage renal failure. Without dialysis, the patient would not survive more than a few days.

48. At least during the period of Relator's employment with Defendants, Defendants classified each and every patient seeking treatment as healthy enough to undergo surgery and anesthesia in its ASC or clinic, even when Defendants knew such classification to be false, so that Defendants could maximize each and every opportunity to bill the government, despite potential risks to patient health and violation of the said regulations. Defendants billed for services based on a scheme to withhold required discharge services necessary to ensure patients are healthy enough to leave following a procedure.

49. Discharge regulations 42 CFR § 416.52 7 and CFR § 416.47 require that the health care provider advise the patient about any complications during the procedure. During a fistulogram declot procedure on patient "R.D.", date of service January 28 or 29, 2013, Gaylord touched and punctured the patient's carotid artery during catheter insertion. During the operation,

14

Gaylord so informed Relator and Didion, another employee of Defendant present during surgery, but Gaylord withheld information regarding the puncture from his medical records and from the patient.

50.     Before discharge from the ASC, each patient must be evaluated by a physician, in accordance with applicable State health and safety laws, standards of practice, and ASC policy, for proper anesthesia recovery. 42 CFR § 416.42(a)(2). On January 31, 2013, regarding patient "D.P.", Gaylord elected not to follow discharge requirements after a procedure, but directed Relator to falsify the patient's medical record to indicate that Relator had performed the discharge procedures for that patient. Relator refused to falsify the patient record.

## C. Defendants bill the Government for procedures conducted without the required prior informed consent.

51.     Before performing procedures, Gaylord is required to, but often purposely fails to explain the procedure's risks or potential side effects of medications to the patients. His policy and practice was to omit such explanations in order to assure the patient will agree to the procedure so that Defendants can bill the government for procedures patients may have otherwise forgone. Gaylord directs patients to sign the signature line for an informed consent form on an iPad, provides no explanations, allows no discussion, and provides no copies of the electronic consent form to the patient for reading, consideration, or record-keeping.

52.     A doctor or nurse must inform the patient or the patient's representative of the patient's rights, and must protect and promote the exercise of such rights. "The ASC must provide the patient or the patient's representative with verbal and written notice of the patient's rights in advance of the date of the procedure in a language and manner that the patient or the patient's representative understands." 42 C.F.R. §416.50.

15

53.     Gaylord never provided interpreters or made accommodations to ensure non-English speakers could read or understand consent forms. Relator observed Gaylord force a non-English speaker, patient "H.S.", date of service February 1, 2013 to sign informed consent papers even though "H.S." explained to doctor that she did not understand what she was reading. Pursuant to his policy and practice, Gaylord did not explain the risks to the patient, but directed her to sign the consent form to agree to the procedure. Gaylord coerced her into signing the form. Relator refused to co-sign with Gaylord that the patient consented. Thereafter, Gaylord required Registered Nurse Mia Bradley, also employed by Defendants, to come in and co-sign the informed consent form, although Mia Bradley was not present for the signing. Gaylord then performed and billed for the surgery anyway, as he did with every patient, despite his refusal to explain risks and potential side effects.

## D. Defendants falsely bill for surgery performed without required pre-surgical assessments.

54.     Gaylord repeatedly performs procedures on patients without following the Medicare requirements for pre-surgical assessments and then bills Medicare and/or Medicaid for the procedures.

55.     Upon admission to an ASC, each patient must have a pre-surgical assessment completed by a physician or other qualified practitioner in accordance with applicable State health and safety laws, standards of practice, and ASC policy that includes, at a minimum, an updated medical record entry documenting an examination for any changes in the patient's condition since completion of the most recently documented medical history and physical assessment, including documentation of any allergies to drugs and biologicals. 42 C.F.R. §416.52(a).

16

56.     On December 29, 2012, patient "J.W." informed Relator during the pre-operation interview that he had eaten a large meal, including ham and head cheese, not more than two hours prior to the scheduled operation. Relator informed Gaylord that they could not do the procedure due to the timing of the patient's meal, and Gaylord stated to the patient "if you tell me that you ate anything after midnight last night, we cannot perform the operation today. So do you want to tell me that you did not eat anything after midnight?" Following such pressure from Gaylord, the patient changed his answer, and then, in order not to miss out on billing the government, Gaylord performed the surgery even though Gaylord knew the patient had eaten before the surgery, causing great risk of patient harm.

**E. Defendants fraudulently operate Vascare and Advanced Interventions as an Ambulatory Surgery Center and a clinic in the same space, which is in violation of the regulations.**

57.     Advanced Interventions is a clinic and Vascare is a Joint Commission-certified ambulatory surgery center. Advanced Interventions and Vascare have the same staff, facility, equipment, and operations. Patients walk in the same door whether going to the clinic or the ASC.

58.     The setup of having a clinic and an Ambulatory Surgery Center using the same space at the same time is in violation of 42 CFR 416.2 and 42 CFR 416.44. The regulatory definition of an ASC does not allow the ASC and another entity, such as an adjacent physician's office, to mix functions and operations in a common space during concurrent or overlapping hours of operations. That is, the two facilities must have entirely separate operations, records, etc., and may not be open at the same time. *See* CMS Compliance Manual for Ambulatory Surgery Centers at: http://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/CertificationandComplianc/ASCs.html

17

59.     In November 2012, Gaylord explained to Relator that Vascare and Advanced Interventions were in the same building. He explained that he paid a substantial amount of money to have the building constructed with two distinct sides and that the "clinic" side had its own operating room. When Relator inquired as to why he needed both, he stated that reimbursement maximization he receives depends on the "setting" in which it is performed, even though he uses a "clinic" and an Ambulatory Surgery Center for the same procedures. During this conversation, Gaylord physically made the quote sign around these words. Then he said that it is very complicated.

60.     Gaylord held a group meeting in January 2012 with Megan Simon, Joe Didion, Shante Dodd, Mia Bradley, Jennifer Cruz, and Relator. During this meeting and on multiple other occasions, Gaylord stated that the patients were technically not supposed to be sitting in the same waiting room if they were Ambulatory Surgery Center and clinic patients.

61.     Relator never saw Gaylord use the clinic, except for storage of supplies.

62.     The schedule differentiated between Advanced Intervention patients and Vascare patients, but they used the same operating room, same waiting area, same hours of operation and same staff.

## F. Defendants falsify medical records in support of claims submitted to the Government for payment.

63.     For the fraudulent actions described above, Defendants falsify medical records to support the claims for payment.

64.     For example, patient "R.D.", date of service January 28 or 29, 2013, Gaylord touched and punctured the patient's carotid artery during catheter insertion, but never so noted in the medical records and never informed the patient of complications.

18

65.     Medical records for patient "J.W.", described above, state that a pre-operative assessment was completed and he was ready to undergo surgery, although he ate a large meal including ham and head cheese not more than two hours before the scheduled operation.

66.     Medical records state that the patient "D.P.", described above, was properly discharged although the proper discharge requirements were not followed after a procedure.

## G. Defendants Terminated Relator Due to Covered Conduct.

67.     On January 31, 2013, Gaylord refused to follow discharge procedure requirements for patient "D.P.".

68.     Later that day, Gaylord told Relator to state in the electronic medical record that Relator discharged the patient. Relator told Gaylord she would not sign the electronic medical record stating that she completed the discharge because she did not complete it.

69.     The next day, upon Relator's arrival to work, Relator checked "D.P."'s electronic medical record and found that Gaylord entered into the computer system that Relator discharged the patient and that Gaylord had falsely signed Relator's name. Relator then complained to Gaylord that he should not have falsely signed her name on the electronic medical records.

70.     Vascare terminated Relator for telling Gaylord that he should not have falsified the medical records when he electronically signed the record by logging into the computer system as Relator and then electrically signing that she had discharged patient "D.P." date of service 1/31/2013 with regard to reporting that Relator had discharged the patient in accordance with the regulations, even though the patient left the facility without being properly discharged.

71.     Gaylord then terminated Relator and stated he was terminating her because he can terminate her for any reason.

19

## VI. CLAIMS

### COUNT ONE
### DEFENDANT VASCARE PRESENTING FALSE CLAIMS FOR MEDICAL ASSISTANCE CONTRARY TO 31 U.S.C. § 3729(a)(1)(A)

72.    Relator re-alleges and incorporates by reference all previous paragraphs.

73.    Through the acts described above, Vascare and its agents and employees knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval in violation of the FCA.

74.    The United States has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws, regulations, and contract in an as of yet undetermined amount.

75.    By the aforementioned misrepresentations and failures to comply, Vascare knowingly made false claims to officials of the United States for the purpose of obtaining compensation and Vascare received such compensation from the United States as a result of Vascare's false claims.

### COUNT TWO
### DEFENDANT VASCARE PRESENTING FALSE CLAIMS FOR MEDICAL ASSISTANCE CONTRARY TO 31 U.S.C. § 3729(a)(1)(B)

76.    Relator re-alleges and incorporates by reference all previous paragraphs.

77.    Through the acts described above, Vascare and its agents and employees knowingly made, used, and/or caused to be made or used a false record or statement material to a false or fraudulent claim to Medicare and Medicaid in order to obtain reimbursement for services otherwise not deserving of government reimbursement in violation of the FCA.

20

78. The United States has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws, regulations, contract, and agreements in an as of yet undetermined amount.

79. Due to the aforementioned misrepresentations and failures to comply, Vascare knowingly made false claims to officials of the United States for the purpose of obtaining compensation and Vascare received such compensation from the United States as a result of Vascare's false claims.

## COUNT THREE
### DEFENDANT VASCARE PRESENTING FALSE CLAIMS FOR MEDICAL ASSISTANCE CONTRARY TO 31 U.S.C. § 3729(a)(1)(C)

80. Relator re-alleges and incorporates by reference all previous paragraphs.

81. Vascare knowingly submitted false claims to the United States when Vascare conspired with Gregg Gaylord, MD and Advanced Interventions in the billing practices, as described above, for the purposes of obtaining compensation to which they would otherwise not be entitled in violation of the FCA.

82. The United States has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws, regulations, and contract in an as of yet undetermined amount.

83. By the aforementioned misrepresentations and failures to comply, Vascare knowingly made false claims to officials of the United States for the purpose of obtaining compensation and Vascare received such compensation from the United States as a result of Vascare's said false claims.

21

## COUNT FOUR
### DEFENDANT VASCARE PRESENTING FALSE CLAIMS FOR MEDICAL ASSISTANCE CONTRARY TO 31 U.S.C. § 3729(a)(1)(G)

84. Relator re-alleges and incorporates by reference all previous paragraphs.

85. Through the acts described above, Vascare and its agents and employees knowingly concealed or knowingly and improperly avoided an obligation to pay or transmit money or property to the Government in violation of the FCA.

86. The United States has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws, regulations, and contract in an as of yet undetermined amount.

87. Due to the aforementioned misrepresentations and failures to comply, Vascare knowingly made false claims to officials of the United States for the purpose of obtaining compensation and Vascare received such compensation from the United States as a result of Vascare's false claims.

## COUNT FIVE
### Wisconsin False Claims for Medical Assistance Act, Wis. Stat. §20.931(2)(a)
### DEFENDANT VASCARE'S KNOWING SUBMISSION OF FALSE CLAIMS FOR PAYMENT

88. Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

89. This is a claim for treble damages and civil penalties under the Wisconsin False Claims for Medical Assistance Act, Wis. Stat. §20.931(2)(a).

90. By fraudulent concealment, misrepresentations and submissions of non-reimbursable claims described above, Vascare knowingly presented or caused to be presented to the Wisconsin Medicaid Program false or fraudulent claims for payment or approval.

91. The Wisconsin Medicaid Program, unaware of the falsity or fraudulent nature

22

of the claims submitted by Vascare, paid for claims that otherwise would not have been allowed.

92. By these payments, the Wisconsin Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT SIX
### Wisconsin False Claims for Medical Assistance Act, Wis. Stat. §20.931(2)(b)
### DEFENDANT VASCARE'S KNOWING CREATION OF FALSE RECORD OR STATEMENT MATERIAL TO FALSE CLAIM

93. Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

94. This is a claim for treble damages and civil penalties under the Wisconsin False Claims for Medical Assistance Act, Wis. Stat. §20.931(2)(b).

95. By fraudulent concealment, misrepresentations and submissions of non-reimbursable claims described above, Vascare knowingly accomplished these unlawful acts by making, using, or causing to be made or used a false record or statement, in violation of Wis. Stat. §20.931(2)(b).

96. The State of Wisconsin, unaware of the falsity or fraudulent nature of the claims that Vascare caused, paid for claims that otherwise would not have been allowed and may not have otherwise been submitted.

97. By these payments, the State of Wisconsin has been damaged, and continues to be damaged in a substantial amount.

## COUNT SEVEN
### Wisconsin False Claims for Medical Assistance Act, Wis. Stat. §20.931(2)(c)
### DEFENDANT VASCARE'S CONSPIRACY TO COMMIT VIOLATION OF FALSE CLAIMS ACT

98. Relator re-alleges and incorporates by reference the allegations contained in the

23

preceding paragraphs of this Complaint.

99. This is a claim for treble damages and civil penalties under the Wisconsin False Claims for Medical Assistance Act, Wis. Stat. §20.931(2)(c).

100. By fraudulent concealment, misrepresentations and submissions of non-reimbursable claims described above, Vascare and Advanced Interventions conspired to commit violations of Wis. Stat. §20.931(2)(c).

101. The State of Wisconsin, unaware of the falsity or fraudulent nature of the claims that Vascare caused, paid for claims that otherwise would not have been allowed and may not have otherwise been submitted.

102. Due to these payments the State of Wisconsin has been damaged, and continues to be damaged in a substantial amount.

**COUNT EIGHT**
**Wisconsin False Claims for Medical Assistance Act, Wis. Stat. §20.931(2)(h)**
**DEFENDANT VASCARE'S KNOWING OR IMPROPER AVOIDANCE OF REPAYMENT OF GOVERNMENT FUNDS**

103. Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

104. By their actions and inactions described above, Vascare has received funds for knowingly submitted false claims and has failed to timely return such funds despite a legal obligation to do so once Vascare had knowledge of the fraudulent receipts, pursuant to Wisconsin False Claims for Medical Assistance Act, Wis. Stat. §20.931(2)(h).

105. Due to these payments, the State of Wisconsin has been damaged, and continues to be damaged in a substantial amount.

24

## COUNT NINE
### DEFENDANT ADVANCED INTERVENTIONS PRESENTING FALSE CLAIMS FOR MEDICAL ASSISTANCE CONTRARY TO 31 U.S.C. § 3729(a)(1)(A)

106.    Relator re-alleges and incorporates by reference all previous paragraphs.

107.    Through the acts described above, Advanced Interventions and its agents and employees knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

108.    The United States has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws, regulations, and contract in an as of yet undetermined amount.

109.    By the aforementioned misrepresentations and failures to comply, Advanced Interventions knowingly made false claims to officials of the United States for the purpose of obtaining compensation and Advanced Interventions received such compensation from the United States as a result of Advanced Interventions' said false claims.

## COUNT TEN
### DEFENDANT ADVANCED INTERVENTIONS PRESENTING FALSE CLAIMS FOR MEDICAL ASSISTANCE CONTRARY-TO 31 U.S.C. § 3729(a)(1)(B)

110.    Relator re-alleges and incorporates by reference all previous paragraphs.

111.    The False Claims Act, 31 U.S.C. § 3729(a)(1)(B), imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.

112.    Through the acts described above, Advanced Interventions and its agents and employees knowingly made, used, and/or caused to be made or used a false record or statement material to a false or fraudulent claim to Medicare and Medicaid in order to obtain reimbursement for services otherwise not deserving of government reimbursement.

25

113.    The United States has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws, regulations, and contract in an as of yet undetermined amount.

114.    By the aforementioned misrepresentations and failures to comply, Advanced Interventions knowingly made false claims to officials of the United States for the purpose of obtaining compensation and Advanced Interventions received such compensation from the United States Government as a result of Advanced Interventions' said false claims.

## COUNT ELEVEN
## DEFENDANT ADVANCED INTERVENTIONS PRESENTING FALSE CLAIMS FOR MEDICAL ASSISTANCE CONTRARY TO 31 U.S.C. § 3729(a)(1)(C)

115.    Relator re-alleges and incorporates by reference all previous paragraphs.

116.    In violation of 31 U.S.C. § 3729(a)(1)(C), Defendant Advanced Interventions knowingly submitted false claims to the United States when Vascare conspired with Gregg Gaylord, M.D. and Advanced Interventions in the billing practices, as described above, for the purposes of obtaining compensation to which they would otherwise not be entitled.

117.    The United States has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws, regulations, and contract in an as of yet undetermined amount.

118.    By the aforementioned misrepresentations and failures to comply, Advanced Interventions knowingly made false claims to officials of the United States for the purpose of obtaining compensation and Advanced Interventions received such compensation from the United States as a result of Advanced Interventions' said false claims.

26

**DEFENDANT ADVANCED INTERVENTIONS PRESENTING FALSE CLAIMS FOR MEDICAL ASSISTANCE CONTRARY TO 31 U.S.C. § 3729(a)(1)(G)**

119.   Relator re-alleges and incorporates by reference all previous paragraphs.

120.   Through the acts described above, Advanced Interventions and its agents and employees knowingly concealed or knowingly and improperly avoided an obligation to pay or transmit money or property to the Government in violation of 31 U.S.C. § 3729(a)(1)(G).

121.   The United States has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws, regulations, and contract in an as of yet undetermined amount.

122.   With respect to the aforementioned misrepresentations and failures to comply, Advanced Interventions knowingly made false claims to officials of the United States for the purpose of obtaining compensation and Advanced Interventions received such compensation from the United States as a result of Advanced Interventions' said false claims.

## COUNT THIRTEEN
**Wisconsin False Claims for Medical Assistance Act, Wis. Stat. §20.931(2)(a)**
**DEFENDANT ADVANCED INTERVENTIONS' KNOWING SUBMISSION OF FALSE CLAIMS FOR PAYMENT**

123.   Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

124.   This is a claim for treble damages and civil penalties under the Wisconsin False Claims for Medical Assistance Act, Wis. Stat. §20.931(2)(a).

125.   Due to the fraudulent concealment, misrepresentations and submissions of non-reimbursable claims described above, Advanced Interventions knowingly presented or caused to be presented to the Wisconsin Medicaid Program false or fraudulent claims for payment or approval.

27

126.  The Wisconsin Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Advanced Interventions, paid for claims that otherwise would not have been allowed and may not have been otherwise submitted.

127.  Due to these payments, the Wisconsin Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT FOURTEEN
### Wisconsin False Claims for Medical Assistance Act, Wis. Stat. §20.931(2)(b)
### DEFENDANT ADVANCED INTERVENTIONS' KNOWING CREATION OF FALSE
### RECORD OR STATEMENT MATERIAL TO FALSE CLAIM

128.  Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

129.  This is a claim for treble damages and civil penalties under the Wisconsin False Claims for Medical Assistance Act, Wis. Stat. §20.931(2)(b).

130.  Due to the fraudulent concealment, misrepresentations and submissions of non-reimbursable claims described above, Advanced Interventions knowingly accomplished these unlawful acts by making, using, or causing to be made or used a false record or statement, in violation of Wis. Stat. §20.931(2)(b).

131.  The State of Wisconsin, unaware of the falsity or fraudulent nature of the claims that Advanced Interventions caused, paid for claims that otherwise would not have been allowed and may not have otherwise been submitted.

132.  By these payments, the State of Wisconsin has been damaged, and continues to be damaged in a substantial amount.

28

## COUNT FIFTEEN
## Wisconsin False Claims for Medical Assistance Act, Wis. Stat. §20.931(2)(h)
## DEFENDANT ADVANCED INTERVENTIONS' KNOWING OR IMPROPER
## AVOIDANCE OF REPAYMENT OF GOVERNMENT FUNDS

133.    Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

134.    By their actions and inactions described above, Advanced Interventions have received funds for knowingly false claims and have failed to timely return such funds despite a legal obligation to do so once Advanced Interventions had knowledge of the fraudulent receipts, pursuant to Wisconsin False Claims for Medical Assistance Act, Wis. Stat. §20.931(2)(h).

135.    By these payments the State of Wisconsin has been damaged, and continues to be damaged in a substantial amount.

## COUNT SIXTEEN
## DEFENDANT GREGG GAYLORD PRESENTING FALSE CLAIMS FOR MEDICAL
## ASSISTANCE CONTRARY TO 31 U.S.C. § 3729(a)(1)(A)

136.    Relator re-alleges and incorporates by reference all previous paragraphs.

137.    Through the acts described above, Gaylord knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

138.    The United States of America has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws, regulations, and contract in an as of yet undetermined amount.

139.    By the aforementioned misrepresentations and failures to comply, Gaylord knowingly made false claims to officials of the United States for the purpose of obtaining compensation and Gaylord received such compensation from the United States as a result of Gaylord's said false claims.

29

## COUNT SEVENTEEN
## DEFENDANT GREGG GAYLORD PRESENTING FALSE CLAIMS FOR
## MEDICAL ASSISTANCE CONTRARY-TO 31 U.S.C. § 3729(a)(1)(B)

140. Relator re-alleges and incorporates by reference all previous paragraphs.

141. Through the acts described above, Gaylord knowingly made, used, and/or caused to be made or used a false record or statement material to a false or fraudulent claim to Medicare and Medicaid in order to obtain reimbursement for services otherwise not deserving of government reimbursement in violation of the FCA.

142. The United States has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws, regulations, and contract in an as of yet undetermined amount.

143. By the aforementioned misrepresentations and failures to comply, Gaylord knowingly made false claims to officials of the United States for the purpose of obtaining compensation and Gaylord received such compensation from the United States as a result of Gaylord's said false claims.

## COUNT EIGHTEEN
## DEFENDANT GREGG GAYLORD PRESENTING FALSE CLAIMS FOR MEDICAL
## ASSISTANCE CONTRARY-TO 31 U.S.C. § 3729(a)(1)(C)

144. Relator re-alleges and incorporates by reference all previous paragraphs.

145. In violation of 31 U.S.C. § 3729(a)(1)(C), Defendant Gaylord knowingly submitted false claims to the United States when Gaylord conspired with Vascare and Advanced Interventions in the billing practices, as described above, for the purposes of obtaining compensation to which they would otherwise not be entitled.

30

146.    The United States has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws, regulations, and contract in an as of yet undetermined amount.

147.    With respect to the aforementioned misrepresentations and failures to comply, Gaylord knowingly made false claims to officials of the United States for the purpose of obtaining compensation and Gaylord received such compensation from the United States as a result of Gaylord's said false claims.

### COUNT NINETEEN
### DEFENDANT GREGG GAYLORD PRESENTING FALSE CLAIMS FOR MEDICAL ASSISTANCE CONTRARY-TO 31 U.S.C. § 3729(a)(1)(G)

148.    Relator re-alleges and incorporates by reference all previous paragraphs.

149.    Through the acts described above, Gaylord knowingly concealed or knowingly and improperly avoided an obligation to pay or transmit money or property to the Government in violation of 31 U.S.C. § 3729(a)(1)(G).

150.    The United States has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws, regulations, and contract in an as of yet undetermined amount.

151.    With respect to the aforementioned misrepresentations and failures to comply, Gaylord knowingly made false claims to officials of the United States for the purpose of obtaining compensation and Gaylord received such compensation from the United States as a result of Gaylord's said false claims.

### COUNT TWENTY
### Wisconsin False Claims for Medical Assistance Act, Wis. Stat. §20.931(2)(a)
### DEFENDANT GREGG GAYLORD'S KNOWING SUBMISSION OF FALSE CLAIMS FOR PAYMENT

152.    Relator re-alleges and incorporates by reference the allegations contained in the

31

preceding paragraphs of this Complaint.

153. This is a claim for treble damages and civil penalties under the Wisconsin False Claims for Medical Assistance Act, Wis. Stat. §20.931(2)(a).

154. By the fraudulent concealment, misrepresentations and submissions of non-reimbursable claims described above, Gaylord knowingly presented or caused to be presented to the Wisconsin Medicaid Program false or fraudulent claims for payment or approval.

155. The Wisconsin Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Gaylord, paid for claims that otherwise would not have been allowed and may not have been otherwise submitted.

156. By these payments, the Wisconsin Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT TWENTY ONE
### Wisconsin False Claims for Medical Assistance Act, Wis. Stat. §20.931(2)(b)
### DEFENDANT GREGG GAYLORD'S KNOWING CREATION OF FALSE RECORD OR STATEMENT MATERIAL TO FALSE CLAIM

157. Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

158. This is a claim for treble damages and civil penalties under the Wisconsin False Claims for Medical Assistance Act, Wis. Stat. §20.931(2)(b).

159. By the fraudulent concealment, misrepresentations and submissions of non-reimbursable claims described above, Gaylord knowingly accomplished these unlawful acts by making, using, or causing to be made or used a false record or statement, in violation of Wis. Stat. §20.931(2)(b).

160. The State of Wisconsin, unaware of the falsity or fraudulent nature of the claims that Advanced Interventions caused, paid for claims that otherwise would not have been allowed

32

and may not have otherwise been submitted.

161.    By these payments, the State of Wisconsin has been damaged, and continues to be damaged in a substantial amount.

**COUNT TWENTY TWO**
**Wisconsin False Claims for Medical Assistance Act, Wis. Stat. §20.931(2)(h)**
**DEFENDANT GREGG GAYLORD'S KNOWING OR IMPROPER AVOIDANCE OF**
**REPAYMENT OF GOVERNMENT FUNDS**

162.    Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

163.    By their actions and inactions described above, Gaylord have received funds for knowingly false claims and has failed to timely return such funds despite a legal obligation to do so once Gaylord had knowledge of the fraudulent receipts, pursuant to Wisconsin False Claims for Medical Assistance Act, Wis. Stat. §20.931(2)(h).

164.    By these payments the State of Wisconsin has been damaged, and continues to be damaged in a substantial amount.

**COUNT TWENTY THREE**
**RETALIATORY WRONGFUL DISCHARGE PURSUANT TO 31 U.S.C. § 3730(H)**

165.    Relator re-alleges and incorporates by reference all previous paragraphs.

166.    Defendants discharged Relator almost immediately after Relator attempted to stop Defendants from submitting false claims to the United States and the State of Wisconsin when her name was added to the discharge papers for a discharge she did not perform after the patient was inappropriately discharged by a nonmedical staff.

167.    By objecting to the improper patient discharge, Relator tried to ensure compliance with the regulations and medical documentation requirements and prevent the submission of a false claim.

33

168. Through the acts of Vascare described above, Vascare discharged Relator because of her covered conduct opposing falsifying the record of the patient's discharge.

169. By Vascare's conduct, Bradley suffered damages and is entitled to relief including, but not limited to, reinstatement with the same seniority status Bradley would have had but for the discharge, two (2) times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discharge, including litigation costs and reasonable actual attorneys' fees.

## COUNT TWENTY FOUR
## RETALIATORY WRONGFUL DISCHARGE PURSUANT TO WIS. STAT. §20.931(14)

170. Relator re-alleges and incorporates by reference all previous paragraphs.

171. Vascare discharged Relator almost immediately after Relator objected to the addition of the name to a medical record after she discovered that someone had signed her name to the medical record for the discharge of a patient when she did not perform the discharge, and the discharge was inappropriate.

172. By objecting to the improper discharge, Relator tried to ensure compliance with medical documentation requirements and prevent the submission of a false claim for medical assistance.

173. Through the acts of Vascare described above, it discharged Relator because of her covered conduct of opposing falsifying the discharge of a patient.

174. Due to Vascare's conduct, Bradley suffered damages, including economic, mental, and physical loss, and is entitled to relief including, but not limited to, reinstatement with the same seniority status Bradley would have had but for the discrimination, two (2) times the amount of back pay, interest on the back pay before doubling, and compensation for special

34

damages sustained as a result of the discrimination, including litigation costs and reasonable actual attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, the United States is entitled to damages from Defendants in accordance with the provisions of 31 U.S.C. §§ 3729-3733, as amended, and Wis. Stat. § 20.931 of which up to twenty-five percent (25%) should be paid to the *qui tam* plaintiff, Kristen Bradley, and such further relief as this Court may deem appropriate or proper.

AND WHEREFORE, Plaintiff/Relator requests that judgment be entered against Defendants, ordering that:

a. Defendants cease and desist from violating the False Claims Act, 31 U.S.C. § 3729 *et seq.* and Wis. Stat. § 20.931;

b. Defendants pay an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty against each Defendant of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729 and Vascare pay not less than $5,000 and up to $10,000 for each violation of Wis. Stat. § 20.931;

c. Plaintiff/Relators be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) and Wis. Stat. §20.931 as *qui tam* Plaintiff;

d. Defendants pay damages to Relator for her employment loss, personal injury and special damages suffered as a result of unlawful retaliation in violation of 31 U.S.C. § 3730(h), including but not limited to two times the amount of back pay and benefits, interest on the back pay, and compensation for special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees;

35

e. Plaintiff/Relator be awarded a make whole remedy pursuant to the mandates of Wis. Stat. §

   20.931(14) including payment of attorneys' fees, expenses and costs;

f. Plaintiff/Relator be awarded all costs of this action, including attorneys' fees, expenses, and

   costs pursuant to 31 U.S.C. § 3730(d);

g. The State of Wisconsin, United States and Plaintiff/Relator be granted all such other relief as

   the Court deems just and proper.

**PLEASE TAKE NOTICE THAT THE PLAINTIFF/RELATOR DEMANDS THE ABOVE
ENTITLED ACTION TO BE TRIED TO A 12-PERSON JURY.**

Dated this _5th_ day of August 2013.

**CROSS LAW FIRM, S.C.**
**Attorneys for Plaintiff**

By: _____
Nola J. Hitchcock Cross
State Bar No. 1015817
Mary C. Flanner
State Bar No. 1013095
Katherine M. Gaumond
State Bar No. 1088722

Cross Law Firm, S.C.
The Lawyers Building
845 N. 11th Street
Milwaukee, WI 53233
Phone: (414) 224-0000
Fax:    (414) 273-7055
njhcross@crossalawfirm.com
kgaumond@crosslawfirm.com
mflanner@crosslawfirm.com
www.crosslawfirm.com

36